## HARTFORD FIRE INS. CO. v. MORRIS et al., and four other cases.

Circuit Court of Appeals, Sixth Circuit. July 10, 1928.

Nos. 5006–5010.

1. **Insurance** ☞156(1), 624(1)—**Owner of fee subject to mortgage and 99-year lease held party to contract of fire insurance, and entitled to recover thereon.**

Owner of fee subject to mortgage and rights of lessee under 99-year lease, to whom fire insurance policies were directly issued without assignment, except for indorsements on policies, *held* a party to contract of insurance, and entitled to recovery thereon on account of fire loss, notwithstanding indorsement declared lessee should be recognized as insured under the policy.

2. **Insurance** ☞624(1)—**Insurers cannot complain that owner of fee was joined as plaintiff in recovery with mortgagee and trustee.**

Even assuming that owner of fee subject to mortgage and 99-year lease could not maintain suit on fire policies in her own name, insurers cannot complain that she was joined as plaintiff in recovery with mortgagee and trustee; it appearing that both parties had interests which, though distinct among themselves, might properly be collected by joint judgment against insurers.

3. **Insurance** ☞646(2)—**Insurers have burden of proving violation of fire policy precluding recovery if hazard was increased.**

Insurers have burden of proving violation of provision of fire policy, precluding recovery in case hazard was increased by any means within control or knowledge of insured.

4. **Insurance** ☞311(1, 3)—**Fire policies held not forfeited as to owner of fee, or mortgagee and trustee, for violation of provision precluding recovery if hazard was increased.**

Policies of fire insurance were not forfeited as to owner of fee, or mortgagee and trustee representing owner under lease, because of violation of provision precluding recovery if hazard was increased, unless they had notice thereof and had failed within reasonable time to inform insurer.

5. **Insurance** ☞665(3)—**Evidence held to sustain finding that neither owner of fee nor mortgagee and trustee had knowledge of increased hazard, defeating recovery under fire policy.**

In action on fire insurance policies, evidence *held* to sustain finding that neither owner of fee nor mortgagee and trustee representing owner under the lease had knowledge of increased hazard by change of insured property from a dwelling house to that of a road house, which would defeat recovery under policy containing provision to that effect.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Separate suits by Emily Morris, the Guardian Trust Company, and the Sampliner Realty Company against the Hartford Fire Insurance Company, against the Phœnix Insurance Company, against the Fidelity-Phœnix Insurance Company, and against the Niagara Fire Insurance Company. Judgments for the first two named plaintiffs, and denying recovery as to plaintiff last named, and defendants separately bring error. Affirmed.

C. W. Sellers, of Cleveland, Ohio, and Paul H. Heineke, of Chicago, Ill. (Myers & Snerly, of Chicago, Ill., Thompson, Hine & Flory, and Stearns, Chamberlain & Royon, all of Cleveland, Ohio, and Hicks & Folonie, of Chicago, Ill., on the brief), for plaintiffs in error.

Clinton M. Horn, of Cleveland, Ohio (Dustin, McKeehan, Merrick, Arter & Stewart, of Cleveland, Ohio, on the brief), for defendants in error.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. In May, 1924, Emily Morris owned in fee a considerable parcel of land in Cuyahoga county, Ohio, on which were several cottages, a dwelling house, a bath house, two garages, and other buildings, and apparently an inn. The dwelling house was insured against loss by fire for $20,000, the contents for $6,000, under nine policies of insurance (all in the same form and with identical provisions), five of which policies were respectively issued by the plaintiffs in error, two by the Hartford Company, and one each by the Phœnix, the Fidelity-Phœnix, and the Niagara. Each policy covered its pro rata of the aggregate insurance. The policies also covered a bungalow, not involved in this suit.

While the several policies were in force, and on May 31, 1924, Emily Morris mortgaged the real estate in question to the Guardian Savings & Trust Company (now the Guardian Trust Company) for $12,000, the policies being thereupon indorsed: "Loss, if any, on buildings, payable to the Guardian Savings & Trust Company, as mortgagee (or trustee), as such interest may appear." Later, and on June 21, 1924, Emily Morris leased the entire premises to the Sampliner Realty Company for a term of 99 years; the Sampliner Company purchasing the contents of the dwelling house. Under that lease the Sampliner Company was to keep the buildings insured to the extent of 80

per cent. of their value at its expense, with provisions in the policies making the loss payable to the Guardian Savings & Trust Company as trustee of insurance moneys, and that all insurance moneys received by such trustee be held in trust, not only as additional security to the lessor for the payment of rentals and other charges provided for in the lease, pending rebuilding or repairing of the buildings damaged or destroyed, but also in trust for the purpose of defraying the cost of rebuilding or repairing, and of paying to the lessor (Emily Morris) any excess remaining in the hands of the trustee after the work of rebuilding or repairing shall have been fully completed and paid for. There was thereupon attached to each of the policies, a rider reciting the fact of the lease and its duration, that the fee was in Emily Morris, that the Sampliner Company should be recognized as the assured, loss, if any, under the respective policies to be payable to the trust company as mortgagee of the fee, and to the trust company as trustee, in accordance with the provisions of the 99-year lease.

Thereafter the Sampliner Company took possession under the lease, and later supplied the dwelling house with additional furniture, etc., and sublet it to others, who occupied it as a hotel or roadhouse until put out of business by the public authorities. About two weeks thereafter the house burned, while unoccupied, except by a watchman. Proofs of loss were furnished by the Sampliner Company to each insurer; each refused payment, for the reason that the hazard had been increased by the change of use from dwelling house to the new use referred to, in violation of a promissory warranty in the insurance policies to the effect that the property was used and was to be used as a family dwelling house; also by virtue of a provision of the policy making it void, and relieving the insurer of liability, if the hazard be increased by any means within the control or knowledge of the assured; and by virtue of a further policy provision that the terms and conditions thereof should not be the subject of waiver, except as indorsed upon the policy or added thereto, etc.

The suits here under review were brought by Emily Morris, the Guardian Trust Company, and the Sampliner Company against each of the defendant insurance companies, to recover its pro rata of the aggregate loss under all the policies. The five suits were tried together. Under mutual requests for directed verdicts, the court rendered joint judgment in favor of Emily Morris and the Guardian Trust Company, trustee, against each defendant insurer, for its pro rata share of the entire loss on the building under all the policies, but denied recovery by the Sampliner Company on account of insurance on either building or contents. These writs are severally brought by the defendant insurers. The Sampliner Company does not ask review.

[1, 2] In our opinion recovery was properly awarded to Emily Morris and the Guardian Trust Company on account of the fire loss on the building. We are unable to assent to the contention that Emily Morris was not a party to the contract of insurance at the time of the loss. The policies were issued directly to her. She does not appear to have assigned them to any one else. She still owned the fee, subject to the mortgage and the rights of her lessee. The latter had not exercised its option of purchase. The indorsements upon the policies before referred to were plainly intended for the benefit of the trust company, both as mortgagee and as trustee under the lease in a fiduciary capacity, including the primary protection of the rights of the beneficiary, Emily Morris. True, the policy indorsement declares that the Sampliner Company shall *be recognized* as the insured under the policy. But we think that, when considered with the writings and the conceded situation generally, this does not mean that Emily Morris and the trust company were not insured, but we think means little, if any, more than that the Sampliner Company could lawfully enforce the insurer's liability for loss. It brought suit for that purpose jointly with Emily Morris and the trust company. The insurers are not harmed by the fact that the lessee itself was not a party to the *recovery*. Its right to sue, whatever it was, inured to the benefit of the other plaintiffs joined with it, and it cannot still recover on the policies. The insurers are as fully protected by the judgments as if they were recovered by the Sampliner Company, either alone or jointly with Emily Morris.

Moreover, the trust company had a right of action upon the policies. Not only was the fire loss payable to it as its mortgage interest should appear, which alone would have authorized the suits to the extent, at least, of that interest, but was trustee of the legal rights of both lessee and lessor under the Sampliner lease. Even assuming that Emily Morris could not have maintained a suit in her own name, the insurers cannot be heard

to complain that she is joined as plaintiff in the recovery with the trust company as mortgagee and as trustee. In our opinion, both Emily Morris and the trust company had interests which, though distinct as between themselves, might properly be collected by joint judgment against the insurers. The latter were not concerned, nor is this court, with the matter of accounting as between the two owners of the judgments.

It remains to consider whether the trust company and Emily Morris were charged with knowledge of the increased hazard by the use of the dwelling house as a roadhouse. The policy provision relied upon by the insurers as precluding recovery, reads: "This entire policy, unless otherwise provided by agreement indorsed hereon, or added hereto, shall be void if the hazard be increased by any means within the control or knowledge of the insured."

[3, 4] The burden was on the insurers to prove a violation of this provision. The Sampliner Company, which was in possession of the premises in question, and equipped and leased them for a roadhouse, was naturally charged with knowledge of the violation of the provision referred to. The District Judge was of opinion that the policies were not forfeited as to Emily Morris or the trust company, as mortgagee and as trustee, representing the owner under the lease, "unless notice thereof should come to their knowledge, and that after notice thereof should come to their knowledge, they failed, within a reasonable time, to inform the insurance company thereof." We agree with this view. The indorsements attached to the policies after the execution of the lease contained this provision: "This policy as to the interest therein of the said payee as mortgagee (or trustee) only, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property nor by any increase of hazard, provided that the mortgagee (or trustee) shall notify this company * * * of any * * * *increase of hazard which shall come to the knowledge of said mortgagee (or trustee)."*

The trial judge also held, and we think correctly, that there is no evidence that Emily Morris or the trust company, as mortgagee and trustee, had any knowledge, "as that word is meant, within the reasonable interpretation of a clause of this character, of the increase of hazard or increase of risk. * * * I am of opinion that it was necessary, in order to avoid the policy, as to the mortgagee, or to avoid it as to Emily Morris, under the circumstances of the indorse-ment on the policy, and to avoid it as to the trustee representing the owner as to that insurance under the terms of the lease, that there should have been knowledge or notice thereof brought home to them. It is not enough that they should have had the means of knowledge. It is not enough that, by the exercise of a certain standard of diligence, the mortgagee or the trustee could have learned of the increased hazard. * * * If we should charge or attempt to charge them with a duty of active enquiry and investigation, we should defeat the entire purpose of the insurance policy under the mortgage clause."

[5] We find no evidence which we think reasonably tends to show that Emily Morris or the trust company had notice or knowledge of the use of the dwelling house as a "roadhouse" or hotel. Aside from the tornado policy feature hereafter referred to, the only evidence which we understand is claimed by plaintiffs in error to show such notice is that subsequent to the making of the written lease, and before the fire, the Sampliner Company deposited with the trust company, and the latter recorded on its books, two Ætna policies, each dated August 24, 1924, which described the insured building as a hotel, and it is claimed on their face showed that the premium rate was many times that on defendants' dwelling house policies. But we are cited to nothing in the Ætna policies which we think reasonably gave notice, even to those seeing the policies, that the building therein described as the "hotel" was the same building described in the policies here in suit as a dwelling house.

The two Ætna policies, insuring respectively certain buildings and contents taken together, gave $7,500 insurance on "the two and one story frame, shingle and composition roof, building known as Inn," and $3,000 on the contents of the building so described; $5,000 on "the three-story frame, shingle-roof, building known as Hotel," and $3,500 on the contents of the building so described; $1,000 on "the one-story, frame, composition roof, building known as Cottage No. 5," and $500 on the contents of the building so described. We understand defendants' contention to be that the building described in the Ætna policies as a "hotel" is the building described in the policies here in suit as a "dwelling house." In *fact*, the dwelling house is described in the latter policies as a *"two-story,* shingle-roof, frame building." In the Ætna policies the "Hotel" is described as a *"three-story* frame, shingle-roof building, known as Hotel." An insurance clerk

in the trust department of the Guardian Trust Company in 1923 and 1924, and down to the time of the trial below, testified that she had no knowledge, and that there is nothing "on our record" to indicate, that the building described in the Ætna policies as a "Hotel" is the building described in the policies in suit as a dwelling house.[1]

In this state of the record, we are not impressed that the trial court erred in holding that there was no evidence that Emily Morris or the Guardian Trust Company, trustee, had any knowledge of the "increase of hazard or increase of risk," meaning, of course, the use of the dwelling house as a hotel or roadhouse. It follows that we think plaintiffs in error were not entitled to a directed verdict against the plaintiffs, and that the court below properly held there was no disputed issue of fact requiring submission to the jury under the reservation attached to the motions of some of the plaintiffs in error for a directed verdict.

The judgment of the District Court must be affirmed.

---

[1] Counsel for plaintiffs in error, as evidence that the trust company knew that the buildings insured by the policies here in suit were, in August, 1924, insured and described in an Ætna policy in its possession as a hotel, cites an entry on a page of the trust company's "Records of Insurance of Guardian Trust Company" (Defendants' Exhibit B), on an Ætna tornado policy (not the Ætna fire policies on the building in question) expiring July 8, 1929 (date of policy and term not given), with the notation: "Tornado—covers specifically on cottages Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, "Lake Front," barn, private garage, hotel, inn, large garage, bath house." We do not find that the "tornado" record purports in terms to cover all buildings on the land leased by Emily Morris to the Sampliner Company. But, if it did, the fact would not seem significant. Aside from the "Hotel," there were 12 cottages in terms covered by the tornado insurance, as well as several other buildings. In the record immediately preceding Defendants' Exhibit B is Defendants' Exhibit A, which is a copy of a page of "Records of Insurance of Guardian Trust Company," containing reference to the $20,000 policy on the dwelling house and $6,000 on contents thereof, with a list of the nine policies thereon (including the five here in suit); also referring to the insurance on bungalow, and containing a notation dated May 3, 1926 (which was after the fire), reading: "20,000 and 6,000 items [the dwelling house and contents] were lately destroyed by fire, which occurred about January 24, '25; these policies are in possession of attorneys who are handling their claim." Taking all these entries together, they do not, in our opinion, reasonably tend to show that the trust company understood that the "Hotel" of the Ætna policies was the "dwelling house" of the policies in suit.