# LUMBERMEN'S MUT. CASUALTY CO. v. McIVER et al.

## No. 297–RJ.

District Court, S. D. California, Central Division.

June 7, 1939.

C. F. Jorz, of Los Angeles, Cal., for plaintiff.

James J. McCarthy, of Santa Monica, Cal., for defendant Loraine Johnson.

Carl B. Sturzenacker, of Los Angeles, Cal., for defendants Jeff Clark and Leotia E. McIver.

JENNEY, District Judge.

This is an action for declaratory relief. Requisite jurisdictional requirements of diversity of citizenship and amount in controversy are present. The insurance company seeks a judicial declaration determining its non-liability upon one of its policies; and asks to be exonerated from the duty of defending a personal injury suit brought against its assured, and also from liability to satisfy any possible judgment in that suit.

The stipulated facts are these: The Lumbermen's Mutual Casualty Company issued a policy of automobile liability insurance to Leotia McIver and Jeff Clark upon an automobile owned by the former. On January 26, 1939, and during the effective period of the policy, this automobile was involved in an accident at Fourteenth and Montana Streets in Santa Monica, California. At that time the automobile was driven through a stop sign into the intersection, and while traveling on the wrong side of the street knocked down and severely injured Loraine Johnson, a pedestrian who was crossing the street in the cross-walk.

A suit, predicated upon negligence, was instituted in the Superior Court of Los Angeles county by Loraine Johnson against the defendants McIver and Clark. Demand was made by said defendants upon the insurance company to defend the suit in the Superior Court on their behalf and to assume liability for any judgment which might be rendered against them therein. This the insurance company refused to do and instituted the present action for declaratory relief, seeking judicial sanction for its claim of non-liability.

The complaint in the case at bar sets out the policy in question as an exhibit and refers particularly to a certain exclusionary clause contained therein. This clause provides that the policy does not apply while the automobile is being operated "by any person in violation of any state, federal or provincial law as to age applicable to such person." The complaint further alleges that the automobile in question at the time of the accident was being operated by defendant Gracie Vaughn, a minor of the age of fourteen years, four months, who was not licensed to operate or drive a motor vehicle in the State of California.

Answers were filed by the various defendants controverting these allegations of the complaint as to who was driving the car at the time of the accident. The other facts, as above stated, were agreed upon by written stipulation.

Counsel for the minor contends that even if Gracie Vaughn were driving the vehicle and without a license, these facts would not be a violation of that clause in the policy forbidding operation "in violation of any state * * * law as to age". He argues that since in California a minor fourteen years of age may be licensed to drive under certain circumstances, the operation by Gracie Vaughn, even though possibly unlawful, and violative of the state law as to driver's licenses, was not violative of the particular state law governing age of drivers referred to in the policy.

Section 257 of the Vehicle Code of California provides:

"No operator's license shall be issued to any person under the age of sixteen years except that an operator's license may be issued to a person fourteen years of age but less than sixteen years of age upon application as required of other minors under section 350 hereof accompanied by a statement of reasons satisfactory to the department given and signed by the persons or person other than the minor required under said section to sign and verify such application.

"The department may impose such restrictions applicable to the licensee as the department may determine to be appropriate to assure the safe operation of a motor vehicle by the licensee." St.Cal. 1935, p. 129.

■■ This section has been construed in connection with exactly the same exclusionary clause in an insurance policy by the District Court of Appeal for the State of California in Brown v. Travelers Ins. Co., 87 P.2d 377; hearing in Supreme Court denied. The argument of counsel here was considered there and rejected. The reasoning of the state court and the decision finally reached is most persuasive, and this court will follow it. Erie Ry. Co. v. Tompkins, 302 U.S. 671, 58 S.Ct. 50, 82 L.Ed. 518.

It is admitted by the insurer that the policy was duly issued, that the premium was paid, that the accident occurred during the effective period of the policy, and that it is claimed by the insured that the accident occurred at a time when insured was operating the automobile covered by

704

the policy in a manner substantially complying with the provisions thereof. It is apparent therefore that insurer's contention that an unlicensed minor was operating the vehicle in violation of the state law and within the meaning of the exclusionary clause constitutes a special defense. Had this been a suit by the injured party directly against the insurer, such a contention would have been pleaded as a special defense. The fact that this is a suit for a declaration of non-liability, brought by the insurer as plaintiff, does not alter the essential nature of the contention. It still amounts to a special defense.

It is well established both on principle and authority that when the existence of the policy at the time of the loss has been admitted and compliance therewith has been alleged, the burden of proving affirmative matter constituting a special defense rests upon the insurance carrier. Aetna Ins. Co. v. Kennedy, 301 U.S. 389, at page 395, 57 S.Ct. 809, 81 L.Ed. 1177; Hartford Fire Ins. Co. v. Morris, 6 Cir., 27 F.2d 508; Murdie v. Maryland Casualty Co., D.C.Nev., 52 F.2d 888, appeal dismissed, 9 Cir., 57 F.2d 1081; Kimball Ice Co. v. Hartford Fire Ins. Co., 4 Cir., 18 F.2d 563, 52 A.L.R. 799. The burden of proving the special defense in the case at bar accordingly rests on the Lumbermen's Mutual Casualty Company.

This conclusion is re-enforced by an examination of the pleadings. It is to be noted that the insurer's allegation consists, not of a statement that Jeff Clark *was not* operating the automobile, but of an affirmative assertion that Gracie Vaughn *was* driving it. The burden of proving that fact rests on the one asserting it.

The Vehicle Code of California provides as follows:

" 'Driver' is a person who drives or is in actual physical control of a vehicle." Section 69, p. 98, St.Cal.1935.

" 'Operator' is a person, other than a chauffeur, who drives or is in actual physical control of a motor vehicle upon a highway." Section 70, p. 98, St.Cal.1935.

The one question of fact before the court therefore is: Was Gracie Vaughn driving or in actual physical control of the motor vehicle at the time of the impact?

At the trial Jeff Clark testified to the following facts: There were three persons in the front seat of the automobile, with Gracie Vaughn on the left, behind the wheel. He was in the middle and Gracie's sister, Maxine, was on his right. He sat close to Gracie, with his back toward Maxine and was teaching Gracie to drive the car. The lesson had been carried on for about twenty minutes prior to the accident and the same seating arrangement had prevailed during the entire period. Prior to that time Clark himself had been at the wheel driving the party about town. About eighty feet from the intersection at which the accident occurred and while the car was going about twenty-five miles an hour, he said to the girl, "Put your brakes on, Gracie". The brakes, when applied, caught just for a moment and then released. Gracie hollered "They won't hold". He glanced at the floor-board and saw that Gracie's foot was on the brake pedal which was depressed to the floor-board. The car was proceeding westward down an incline toward the intersection and the speed of the car was being gradually accelerated. At the street intersection several cars were stopped in compliance with the boulevard stop sign there located. Clark's car was traveling nearer the center line of the street than the curb line. About fifteen or twenty feet behind the cars that were stopped at the boulevard, Clark realized he might bump into them. He grabbed the steering wheel, first with his left hand and then with his right, and swerved the car in a southerly direction so as to miss the automobiles in front of him. The southerly side of the street appeared to be clear from all directions. However, Loraine Johnson, who was crossing the street in a southerly direction in front of the stopped cars, and who had proceeded about two-thirds of the way across the street, was struck by the left front fender of the car.

Just prior to the impact, and as soon as he saw the pedestrian, Clark removed his left hand from the wheel, reached over Gracie's lap under the steering post, and grabbed the emergency brake. The emergency brake on that car came out from under the cowling and was operated by pulling the lever backwards. The brake lever did not lock automatically unless it was pulled straight back toward the driver. If it was pulled to the right it would not lock automatically, although its brake pressure would be applied.

Clark thereafter kept his left hand on the emergency brake lever until the car was finally stopped. At the time of the

impact with Loraine Johnson the car was still traveling about twenty-five miles an hour, having picked up speed because of the incline down which it was proceeding. Clark did not remember definitely whether or no Gracie took her hands off the wheel when he took hold of it; he does remember, however, that at the time he grabbed it she had her hands on the lower part of the wheel and does not remember that she continued that hold. In any event he had no interference from Gracie's arms or body in operating the car. After Clark grabbed the wheel and until the car was finally stopped, Gracie did nothing and was terribly excited. After the impact Clark continued to hold onto the emergency brake with his left hand and, with his right hand, steered the car across the intersection and onto the right-hand side of the street, stopping in the middle of the next block near the curb line. As he thought the foot brake would not work, he stopped the car with the emergency brake.

Gracie Vaughn testified to the following facts: She knew nothing about driving an automobile at the time she began to take the lesson, twenty minutes prior to the accident. During that twenty minutes, she had been driving under Mr. Clark's immediate supervision, making several stops and starts, the car operating perfectly. The seating arrangement and the circumstances leading up to the accident were substantially as indicated in the testimony of Mr. Clark. Approximately forty feet behind the cars which were stopped at the intersection Mr. Clark reached over her lap and grabbed the wheel and the emergency brake. He held onto them both until the car was stopped at the right hand curb line in the next block and they alighted. After Mr. Clark took hold of the steering wheel, she did not attempt to turn the car in any direction or to operate it. In answer to the question as to whether or not she had done anything else in operating the automobile after Clark seized the wheel and swerved the car, Gracie testified: "I can't remember, it happened so quick I don't know; I don't think I did. I don't remember whether the motor was still going. I can't remember what part of the wheel Mr. Clark took hold of; and I can't remember whether I continued to hold onto the wheel or not. I can't remember what I did."

In regard to the foot-brake and clutch pedal, Gracie testified at first that she remembered pressing on both pedals before discovering that the brake would not work, and that at the time of the accident they were both depressed. Upon cross-examination she admitted frankly that she really did not know whether her feet were on the brake and clutch pedals at the time of the impact. She was much excited and could not remember what she did.

The court is inclined to believe that both Gracie and Mr. Clark tried to tell on the stand a straight-forward story as to what occurred. It is inclined to resolve any discrepancies between the two accounts, in favor of Mr. Clark's testimony as against the testimony of a fourteen year old child. The minor, evidently very much flustered, disclosed no certain knowledge of what happened after Mr. Clark grabbed control. She apparently—and perhaps quite naturally—lost her head. In such circumstances the court feels that the testimony of an experienced man, of mature years, who evidently was cool and collected, and who was thinking and acting quickly and efficiently, is more reliable and credible.

The court therefore finds as a fact that Gracie Vaughn was not driving or in actual physical control of the motor vehicle at the time of the accident; that she was activating none of the operating devices of the automobile; that her role was a passive one, and she in no way interfered with the operating activities of Mr. Clark. While not actually in the driver's seat, Clark was in full control of such operating devices as he deemed expedient to use in the emergency. The court further finds that Mr. Clark was actually in physical control of the motor vehicle at the time of the impact.

Effort was made by counsel for the insurance company to impeach the testimony of Mr. Clark by introducing in evidence two written statements, admittedly signed by Clark at the instigation of a representative of the insurance company—six and ten days, respectively, after the accident. Mr. Clark testified substantially as follows: These statements were written out by the insurance company's representative and he, Clark, signed them without reading them over carefully. He understood that they were simply informal reports of the accident and felt at the time that he should "play ball" with the insurance company as he was in the real estate and insurance business himself. For these reasons he

was not careful to correct the written statements when they were submitted to him. These written statements contained assertions of fact which were disproved at the trial. Some, at least, of these misstatements were so at variance with the proven facts and the probabilities as to indicate to the court that they were inspired by an over-zealous insurance company representative. In any event the written statement that Gracie was driving the car at the time of the accident was repudiated by Clark. The court feels that the testimony of Clark at the trial revealed the true facts and that the written statements were inaccurate, and in some respects untrue.

Counsel for the insurer insists that this case is controlled by the decision in State Farm Mutual Automobile Ins. Co. v. Coughran, 303 U.S. 485, 58 S.Ct. 670, 82 L.Ed. 970, because Gracie Vaughn and Jeff Clark were jointly operating the vehicle. An examination of that opinion discloses an express finding of joint operation. The evidence there showed that a minor in the driver's seat was actually employing all of the operating devices except the steering wheel which had been seized by the insured's wife. No such finding can be made on the evidence in this case. There is no convincing evidence that Gracie Vaughn activated any of the operating devices of the vehicle. The fact that there may have been available to Clark certain devices which he did not use, or that he did not do certain things which he might have done, is not material here. His failure to blow the horn to warn pedestrians, or to use the clutch or foot-brake— assuming that the latter was functioning —may or may not have amounted to negligence, but such failure of Clark cannot prove that Gracie Vaughn was the operator of the car. Her mere presence in the front seat behind the driving wheel is not determinative. The holding of a small child in the lap of a driver, alone could not be held to be proof of joint operation; and Gracie's presence in the driver's seat was no more efficacious for driving purposes than the child in the lap.

In any event, the State Farm Mutual Auto Insurance Co. opinion is not controlling here, because of the condition of the pleadings in the case at bar. The complaint alleges sole operation by Gracie; it does not allege joint operation. Had it done so, the question of joint control might have assumed more than academic interest. Counsel for the insurer had ample opportunity to amend. The reason for his failure so to do will not be inquired into by this court, which has no desire to dictate an attorney's trial strategy.

It is well established law that the granting of a declaratory judgment lies considerably within the discretion of the court, after mature consideration of all of the circumstances of the case. The remedy of declaratory relief, while created by statute, is one based largely on equitable considerations and the view is now well established that where the court has heard all of the facts and has considered the legal relationships of the parties, it may, in its sound discretion, refuse to render a declaratory judgment, if it seems to the court that the basis for relief has been insufficiently established. Borchard, Declaratory Judgments, pp. 99, 107 et seq., and cases there cited; 16 Am.Juris. 287 and cases there cited; Ohlinger's Fed.Practice, Vol. 3, p. 775. In view of the court's findings in this case, a declaration that the plaintiff insurance company is excused from the obligations of its policy contract is hereby denied.

Judgment for the defendants.